# EXHIBIT 1

Boris Treyzon, Esq. (SBN 188893)
*btreyzon@actslaw.com*
Derek Braslow, Esq. (Pro Hac Vice Forthcoming)
*dbraslow@actslaw.com*
Pinar Kermani, Esq. (SBN 355486)
*Pkermani@actslaw.com*
Michael Zuzo, Esq. (SBN 356667)
*mzuzo@actslaw.com*
**ABIR COHEN TREYZON SALO, LLP**
16001 Ventura Blvd., Ste. 200
Encino, CA 91436

Attorneys for Plaintiff,
JOHN RA DOE

Electronically Filed
Superior Court of California
County of San Bernardino
Victorville District
10/17/2025 2:31 PM
By: Alyssa Leber, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN BERNARDINO

| | |
|---|---|
| JOHN RA DOE,<br><br>        Plaintiff,<br><br>  v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; VICTORVILLE CALIFORNIA STAKE OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; DOES 1 to 100,<br><br>        Inclusive,<br><br>        Defendants. | Case No.:    CIVVS2507267<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **NEGLIGENCE**<br>2. **NEGLIGENT SUPERVISION OF A MINOR**<br>3. **SEXUAL ABUSE OF A MINOR**<br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>5. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION**<br>6. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF**<br>7. **BREACH OF MANDATORY DUTY**<br>8. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff, JOHN RA DOE, of and for his causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1

1.      This case involves egregious sexual and emotional abuse of a child.

2.      In 1999, minor Plaintiff JOHN RA DOE was systematically and repeatedly abused by John Goodrich, an adult male religious leader of The Church of Jesus Christ of Latter-Day Saints. The extreme sexual and emotional abuse was allowed to occur on multiple occasions, was perpetrated in relation to Defendants' youth activities, and resulted from Goodrich's position of authority and trust within the Church.

**PARTIES**

3.      Plaintiff JOHN RA DOE (hereinafter **"PLAINTIFF"**) is an adult male under the age of forty at the time of this filing and a resident of Adelanto, California. As a victim of childhood sexual assault, as defined by section 340.1 of the California Code of Civil Procedure, the name "John RA Doe" is not the Plaintiff's actual name, but is a fictitious name utilized to protect his privacy. John RA Doe is entitled to protect his identity in this public court filing by not disclosing his name. *See Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758. As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme conduct by John Goodrich (hereinafter **"PERPETRATOR"** or **"PERPETRATOR GOODRICH"**)

4.      Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning his identity and making his identity public, as such a public disclosure would further harm Plaintiff and his family.

5.      Defendant THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter **"CHURCH"**) is, and at all relevant times was, a nonprofit religious corporation organized under the laws of the State of Utah, with its principal place of business at 50 East North Temple, Floor 20, Salt Lake City, Utah 84150. The Church is registered to do business in California and conducts continuous and systematic activities within the state. The Church operates wards, stakes, congregations, temples, and other houses of worship in California, including a meetinghouse located at 15500 Tuscola Road, Apple Valley, CA 92307 (Desert Knolls Ward), and 12242 Navajo Road, Apple Valley, CA 92308 (Mojave Narrows Ward). Defendant John Goodrich held and used his position as Bishop to groom and sexually abuse Plaintiff in connection with Church activities

and while on Church premises. The presiding Bishop and other leaders of the Church serve at the pleasure of, and under the direct and absolute control of, the Church. The Church's organizational divisions include wards, stakes, and areas. The Church is independently liable for its own acts and omissions, is liable as successor in interest to other Defendant entities, and/or is an alter ego of its co-defendants.

6. Defendant the TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter **"TEMPLE CORPORATION")** is and was at all relevant times herein mentioned, a religious entity and subsidiary of the Church. The Temple Corporation is a nonprofit corporation duly organized and operating pursuant to the laws of the State of Utah, with its principal place of business at 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150. The Temple Corporation operates properties, temples and other houses of worship within the State of California, including a house of worship located at 15500 Tuscola Road, Apple Valley, CA 92307 (Desert Knolls Ward), and 12242 Navajo Road, Apple Valley, CA 92308 (Mojave Narrows Ward). The Temple Corporation conducts continuous and systemic activities in California and is registered to do business in the state of California. The Temple Corporation operates, maintains and manages the Church's properties at the direction of and under the control of the Church. The Temple Corporation is independently liable for its own conduct as alleged herein, is liable as a successor in interest to the other Defendant entities, and/or is an alter ego of Defendants.

7. Defendant VICTORVILLE CALIFORNIA STAKE OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS (hereinafter **"VICTORVILLE CALIFORNIA STAKE")** is, and at all relevant times was, a religious entity of unknown form, believed to be an unincorporated association in the County of San Bernardino, California. The Victorville California Stake conducts continuous and systematic activities in California and maintains its principal place of business, upon information and belief, at 12100 Ridgecrest Road, Victorville, CA 92395. It operates, maintains, and manages The Church's congregations and wards within San Bernardino County under the direction and control of The Church, including the Desert Knolls Ward and the Mojave Narrows Ward. At all relevant times, the Victorville California Stake had responsibility for some or all

Church operations within San Bernardino County and reported directly to The Church. The Victorville California Stake is independently liable for its own conduct, liable as a successor in interest to other Defendant entities, and/or is an alter ego of Defendants.

8.      Defendant DOE 1, was, at all relevant times, the President of the Victorville California Stake in California, and that in such capacity Defendant DOE 1 engaged in and/or had responsibility for the acts and omissions alleged herein. Plaintiff is ignorant of the true name and identifying information of Defendant DOE 1, and therefore sues this Defendant under a fictitious name pursuant to Code of Civil Procedure § 474. Plaintiff will amend this Complaint to allege the true name and capacity of DOE 1 when ascertained.

9.      Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto, Plaintiff and Perpetrator Goodrich participated in Church activities at the Desert Knolls Ward of the Victorville California Stake, located at 15500 Tuscola Road, Apple Valley, California 92307, and at the Mojave Narrows Ward of the Victorville California Stake, located at 12242 Navajo Road, Apple Valley, California 92308. The Desert Knolls Ward and the Mojave Narrows Ward were and are subdivisions of the Victorville California Stake, and at all relevant times operated under the authority and direction of the Church. The leaders of the Desert Knolls Ward, the Mojave Narrows Ward, and the Victorville California Stake, including their Bishops and other ecclesiastical officers, exercised supervisory and disciplinary authority over Church premises, activities, and participants at all relevant times. The abuse alleged herein occurred in San Bernardino County, California, during and in connection with Church activities, while on Church premises, and under the control and authority of Defendants.

10.     Defendants, and each of them, assumed responsibility for the wellbeing of their members, including minors, through clergy and volunteers appointed by the Church. In their capacities as Bishop, Stake President, Relief Society President, visiting teacher, Missionary, Sunday School teacher, Primary teacher, Elder, Counselor, Clerk, and other leadership or ministerial roles, Defendants and their agents were placed in positions of trust, responsibility, and authority over Church members. As a result, Defendants had a special relationship with members of the

congregation, including the minor Plaintiff, which gave rise to a duty to protect them from foreseeable risks of harm. At all relevant times, Defendants also maintained disciplinary processes and red-flagging systems designed to identify and monitor sexual predators or other dangerous individuals within the membership in order to protect child congregants, including Plaintiff, from abuse.

11.    Defendants' income comes from member tithes which are turned over to the Church for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes and areas. The Church does not provide information about their finances to their members or the public. Upon information and belief, the Church receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, The Church of Jesus Christ of Latter-day Saints owns financial assets and real estate in excess of 200 billion dollars.

12.    The true name[s] and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 2 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants were the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

13.    Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-Defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint

1  venture.

2      14.    All of the acts, conduct and nonfeasance herein carried out by each and every

3  representative, employee or agent of each and every Defendant, was authorized, ordered and

4  directed by their respective Defendant's corporate or business employers, officers, directors and/or

5  managing agents; that in addition thereto, said corporate or business employers, officers, directors

6  and/or managing agents had advance knowledge of, authorized and participated in the herein

7  described acts, conduct and nonfeasance of their representatives, employees, agents and each of

8  them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance

9  of the employees and agents, the aforesaid corporate and business employers, officers directors,

10  and/or managing agents, respectively ratified, accepted the benefits of, condoned and approved of

11  each and all said acts, conduct or nonfeasance of their co employees, employees and agents.

12      15.    Perpetrator Goodrich was a Bishop and acted as an employee, agent, servant, and/or

13  authorized representative of Defendants when he sexually assaulted Plaintiff, who was then a minor

14      16.    During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants

15  supervised and exercised control over Perpetrator Goodrich.

16      17.    Each Defendant is responsible, in some manner, for the events and happenings herein

17  referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

18      18.    Except as otherwise noted, a reference to "DEFENDANTS" in this Complaint shall

19  include the CHURCH, the TEMPLE CORPORATION, The VICTORVILLE CALIFORNIA

20  STAKE, and DOES 1 through 100, inclusive.

21  **JURISDICTION AND VENUE**

22      19.    This Court has personal jurisdiction over Defendants because each Defendant resides

23  in, is incorporated in, has their main place of business in, and/or systematically and continually has

24  conducted and continues to conduct business in the County of San Bernardino and the State of

25  California.

26      20.    The subject incidents upon which this Complaint is based occurred in the City of

27  Apple Valley, within the County of San Bernardino, in the State of California. As such, venue is

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

proper in the San Bernardino County Superior Court of California.

**FACTUAL ALLEGATIONS**
**(Common to All Causes of Action)**

21.     The Church of Jesus Christ of Latter-day Saints is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

22.     The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

23.     Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

24.     The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

25.     Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction of the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

26.     Bishops, appointed and overseen by the Stake President, are responsible for the

---

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng
[2] [LDS] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)
[3] [LDS] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

27.    Each Stake President calls upon 12 high priests to form the Stake High Council.[5] If an elder is called to serve on the high council, he is ordained a high priest before he is set apart. Under the direction of the stake presidency, high councilors help with God's work of salvation and exaltation in the stake.[6]

28.    Defendants, through their bishops, leaders, agents, and employees, knew, should have known, or reasonably suspected that Perpetrator Goodrich was engaging in sexual abuse of Plaintiff, which occurred repeatedly during Church activities and on Defendants' premises, including the Desert Knolls Ward and Mojave Narrows Ward in Apple Valley, California.

29.    Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by The Church of Jesus Christ of Latter-day Saints. Membership records are the Church's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to the Church.

30.    Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for *"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church*

---

[4] [DOE 1] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

[5] Doctrine and Covenants 102:1; 124:131

[6] https://www.churchofjesuschrist.org/study/manual/general-handbook/6-stake-leadership?lang=eng

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   *funds."* All annotations placed on a member's record are approved by the First Presidency.

2       31.   Defendants maintain a pattern and practice of concealing abuse from the authorities,

3 and signals that its members should conceal and/or fail to report abuse so as to keep "the Church

4 from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter*

5 (August 4, 2020). Through this policy of concealment, Defendants ratify abusive conduct,

6 perpetuating a culture of concealment and encouraging a lack of cooperation among Church

7 members with law enforcement.

8       32.   The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of

9 abuse, the first responsibility of the Church is to assist those who have been abused, and to protect

10 those who may be vulnerable to future abuse."

11       33.   In 1995, Defendants created a 1-800 Help Line to report abuse, but it is only available

12 to ecclesiastical leaders. Utah's Supreme Court characterized the Help Line as "a 1-800 number that

13 bishops and other Church clergy can call when they become aware of possible abuse. The Help Line

14 is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who

15 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal

16 with the complex emotional, psychological, and legal issues that must be addressed in order to

17 protect the victim.'"[7]

18       34.   In reality, The Church of Jesus Christ of Latter-day Saints primarily staffs the Help

19 Line with attorneys. Rather than notifying law enforcement or other government authorities when

20 Bishops or other Church clergy members call the Help Line regarding sexual abuse within the

21 Church, Help Line operators transfer these calls to attorneys, who regularly advise the Bishops not

22 to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as

23 their reasoning.

24       35.   Defendants' policies and protocols further direct teachers and other mandated

26 [7] *See*, President Russell M. Nelson Letter (August 4, 2020); *see also,* FOX 13 Investigates: LDS
27 Church urges leaders to not participate in 'any type of court case'; *See*, *MacGregor v. Walker,* 322
P.3d 706, 707 (2014).

reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their mandatory duty to disclose and report abuse.

36.    In another sexual abuse-related civil lawsuit against the Church and its agents, an attorney for the Church "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[8]

37.    In other words, the Church implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for attorneys to snuff out complaints and protect the Church and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson's Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse. [9]

38.    Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as "a matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allow predators like Perpetrator Goodrich to continue his predatory conduct completely unhindered and protected, and in such action taken against John RA Doe's innocence and vulnerabilities, were careless, reckless, negligent, and consciously disregarded a minor's rights, as more fully described herein.

39.    Defendants also provide direct access to a large youth community wherein a danger to the community, like Perpetrator Goodrich, wielded power over John RA Doe.

**PLAINTIFF JOHN RA DOE**

40.    Plaintiff John RA Doe was raised as a member of The Church of Jesus Christ of Latter-day Saints and regularly attended religious services, programs, and activities.

---

[8] *See* The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter)

[9] https://www.exmormon.org/phorum/read.php?2,2530131,2530447

41.     In or about 1999, when Plaintiff was approximately eleven years old, he traveled with Perpetrator Goodrich to California and, during those visits, attended services and Church activities at the Desert Knolls Ward, which Plaintiff believes belonged the Victorville California Stake at the time, located at 15500 Tuscola Road, Apple Valley, California 92307, and the Mojave Narrows Ward, which Plaintiff believes belonged the Victorville California Stake at the time, located at 12242 Navajo Road, Apple Valley, California 92308.

42.     At all relevant times, Perpetrator John Goodrich served as a Bishop within the Church, where he was entrusted with authority, responsibility, and unsupervised access to Church members, including children such as Plaintiff. By virtue of this role, Goodrich used his position of authority and trust to isolate Plaintiff during services and other Church-sponsored activities.

43.     On numerous occasions, Perpetrator Goodrich lured Plaintiff into secluded areas of the meetinghouses, including bathrooms, showers, and other private rooms, under the guise of providing spiritual guidance, mentorship, or assistance connected to Church activities. Once alone, Perpetrator Goodrich used his position of authority and the absence of supervision to sexually abuse Plaintiff.

44.     The abuse included repeated fondling and groping, during which Perpetrator Goodrich placed his hands beneath Plaintiff's clothing and touched Plaintiff's genitals and buttocks, making skin-to-skin contact.

45.     Perpetrator Goodrich also forced Plaintiff to perform oral copulation on him and Goodrich performed oral copulation on Plaintiff.

46.     Perpetrator Goodrich further coerced Plaintiff into engaging in reciprocal sexual acts by manipulating him with statements such as "fair is fair."

47.     The abuse was not limited to isolated incidents but escalated in frequency and severity over time.

48.     The abuse escalated to repeated and painful anal penetration, which caused Plaintiff both physical pain and severe emotional trauma.

49.     Perpetrator Goodrich used manipulation, coercion, and threats to silence Plaintiff

1  when he cried or resisted, including instructing Plaintiff to conceal visible injuries.

2      50.    These acts of sexual abuse occurred on numerous occasions in or about 1999, while

3  Plaintiff was attending Church services and activities at the Desert Knolls Ward and Mojave

4  Narrows Ward in California, and participating in Church-sponsored programs conducted under

5  Defendants' supervision and control.

6      51.    Plaintiff was frozen in fear during these incidents and was unable to move or call

7  for help.

8      52.    Plaintiff did not disclose the abuse at the time due to fear, shame, and manipulation

9  by Goodrich. As a result, no report was made to law enforcement, and no action was taken by

10  Defendants to investigate, remove, or restrict Goodrich's access to children.

11      53.    Plaintiff is informed, believes, and thereupon alleges that other leaders, officers,

12  employees, volunteers, and agents of Defendants knew or should have known that Perpetrator

13  Goodrich was isolating minor children, including Plaintiff, and engaging in inappropriate sexual

14  contact at Church premises in Apple Valley, California. In fact, in or about 1999, Bishop John

15  Goodrich confessed to leaders within the Church that he had engaged in an inappropriate sexual

16  relationship with a 16-year-old girl. Despite this confession, Defendants failed to report Goodrich

17  to authorities, failed to take reasonable steps to protect other children, and instead turned a blind

18  eye, thereby enabling Goodrich to continue abusing children, including Plaintiff.[10]

19      54.    Plaintiff is further informed and believes that other minor children in the

20  Victorville ward may also have been sexually abused by Goodrich during the relevant period.

21      55.    Despite this knowledge, Defendants failed to act, and Perpetrator Goodrich was

22  allowed unsupervised access to Plaintiff during Church activities, during which he repeatedly

23  sexually assaulted Plaintiff while Plaintiff was a minor participant in The Church of Jesus Christ

24  of Latter-day Saints in San Bernardino County, California.

25      56.    Prior to, during, and after Perpetrator Goodrich's sexual assault and/or sexual abuse

26  and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees,

27

28  [10] https://www.pbs.org/newshour/nation/recordings-show-how-mormon-church-kept-child-sex-abuse-claims-secret

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

and/or volunteers, knew or should have known, reasonably suspected, and/or were otherwise on notice, that Perpetrator Goodrich's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

57.     Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation, or any other persons of the possible risk of further childhood sexual abuse by Perpetrator, limit or supervise Perpetrator Goodrich's access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse and molestation of Plaintiff.

58.     Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff by Defendants' employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by Perpetrator Goodrich.

59.     As a direct and proximate result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report Perpetrator Goodrich's unlawful and inappropriate misconduct, he was able to continue his sexual assaults and/or sexual abuse and molestation of Plaintiff.

60.     Defendants, acting through their representatives, agents and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by Perpetrator Goodrich because, inter alia, Defendants:

      a)   Negligently hired, supervised, retained, monitored, and/or investigated Perpetrator Goodrich.

      b)   Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

      c)   Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law

1    enforcement.

2    61.    Defendants also intentionally and willfully implemented various measures intended

3    and designed to, or which effectively made Perpetrator Goodrich's conduct harder to detect,

4    including, but not limited to:

5    a) Permitting Perpetrator Goodrich to remain in a position of good standing after

6        Defendants knew or should have known, reasonably suspected, or were otherwise

7        on notice, that Perpetrator Goodrich sexually abused and/or sexually assaulted, and

8        molested minor children, including Plaintiff.

9    b) Permitting Perpetrator Goodrich continued and/or unsupervised access to Plaintiff,

10       after Defendants knew or should have known, reasonably suspected, or were

11       otherwise on notice, of Perpetrator's misconduct that created a risk of childhood

12       sexual assault.

13   c) Failing to inform or concealing from law enforcement officials the fact that

14       Plaintiff and others were or may have been sexually assaulted after Defendants

15       knew or should have known, reasonably suspected, or were otherwise on notice,

16       that Perpetrator Goodrich had, and/or was engaged in the sexual assault of Plaintiff,

17       thereby creating the circumstance where Plaintiff and others were less likely to

18       receive medical/mental health care and treatment, thus exacerbating the harm to

19       Plaintiff.

20   d) Holding out and affirming Perpetrator Goodrich to Plaintiff and Plaintiff's parent,

21       other children and their parents, and to the community as being in good standing

22       and trustworthy.

23   e) Failing to take reasonable steps, and to implement reasonable policies, procedures,

24       and safeguards to avoid, detect, and report acts of unlawful sexual conduct by

25       employees, including Perpetrator Goodrich with minor children.

26   f) Failing to implement a system or procedure to supervise or monitor employees,

27       volunteers, representatives or agents to ensure that they did not molest or assault

28

14

minors in Defendants' custody or care, including Plaintiff.

62.    Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

63.    Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

64.    The wrongful, intentional, and negligent acts and/or omissions of Defendants, and each of them, were a direct and proximate cause of the childhood sexual assaults by Goodrich and the resulting injuries to Plaintiff.

65.    As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling. As a result of the abuse at the hands of Perpetrator Goodrich, Plaintiff's life has been permanently altered.

66.    As a direct and proximate result of the sexual abuse by Perpetrator Goodrich, Plaintiff suffered severe psychological and emotional injuries, including depression, anxiety, panic attacks, sleeplessness, nightmares, and dissociation. Plaintiff has struggled, and continues to struggle, in his relationships with his family, peers, and others.

67.    The significant emotional and psychological injuries sustained by Plaintiff have

profoundly transformed his personality and ability to function in society. Plaintiff's suffering is ongoing and permanent, and he will never fully recover from the trauma inflicted by Perpetrator Goodrich.

### FIRST CAUSE OF ACTION

### NEGLIGENCE

### (Plaintiff Against All Defendants and DOES 1-100)

68.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

69.     Defendants are persons and entities who owed a duty of care to Plaintiff and/or his parents, and who had a duty to control the conduct of Perpetrator Goodrich by virtue of the special relationship existing between Defendants, Plaintiff, and Goodrich.

70.     Defendants knew, or in the exercise of reasonable care should have known, that Perpetrator Goodrich engaged in such inappropriate sexual behavior and posed a danger to minors, including Plaintiff.

71.     Despite such knowledge, Defendants failed to take reasonable steps to prevent, investigate, or stop Goodrich's misconduct; failed to warn or protect Plaintiff and his parents; and failed to comply with their legal duties to protect minors in their care.

72.     As a direct and proximate result of Defendants' negligence, and as a substantial factor in causing Plaintiff's harm, Plaintiff was repeatedly sexually abused by Perpetrator Goodrich. Had Defendants fulfilled their duties and responsibilities to Plaintiff, he would not have been subjected to such misconduct.

73.     As a direct and proximate result of Defendants' conduct, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, lasting physical and emotional pain, severe psychological harm, ongoing emotional distress, past and future medical and psychological care and treatment, and past and future loss of earnings and earning capacity, all in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

**SECOND CAUSE OF ACTION**

**NEGLIGENT SUPERVISION OF A MINOR**

**(Plaintiff Against All Defendants and DOES 1-100)**

74.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

75.     Defendants, along with their agents and employees, were responsible for the care, custody, control, supervision, and protection of minor children, including Plaintiff, who were entrusted to them by virtue of a special relationship and through the Church's community programs and religious traditions. Perpetrator Goodrich, acting as Defendants' Bishop, leader, agent, and/or representative, held a position of authority within the Church and was granted access to Church premises and other locations where he had direct and unsupervised contact with youth members. Accordingly, each Defendant owed Plaintiff a duty to adequately and properly supervise, monitor, and protect him from known and reasonably knowable dangers, including the risk posed by Goodrich.

76.     Defendants breached their duty to properly and adequately supervise, monitor, and protect Plaintiff by, among other things: ignoring reports, warnings, and obvious indicators that Goodrich was engaged in inappropriate conduct toward minors; permitting Plaintiff to spend unsupervised, one-on-one time with Goodrich at the meetinghouse, in vehicles, and in other locations; disregarding Plaintiff's whereabouts and wellbeing, thereby enabling Goodrich to isolate and abuse him; and failing to intervene to prevent ongoing abuse.

77.     Defendants also recklessly and negligently failed to implement and/or enforce basic child protection policies and procedures, including screening, training, mandatory reporting, monitoring, and safeguards designed to prevent or detect sexual abuse of minors, which fell well below the standard of care.

78.     Had Defendants, and each of them, adequately performed their duties and responsibilities, Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment he endured, and which continues to impact his life today, as alleged herein.

79.    As a direct and proximate result of Defendants' negligence, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical and psychological care and treatment, and past and future loss of earnings and earning capacity, in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

### THIRD CAUSE OF ACTION
### SEXUAL ABUSE OF A MINOR
### (Plaintiff Against All Defendants and DOES 1-100)

80.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

81.    While Plaintiff was a minor member and Participant of Defendants' Church, Perpetrator Goodrich exploited his position of authority, trust, and influence to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not and could not consent to these acts due to his age.

82.    Defendants ratified Perpetrator Goodrich's sexual abuse of Plaintiff because Defendants knew, or in the exercise of reasonable care should have known, that Perpetrator Goodrich was engaging in inappropriate and harmful conduct with Plaintiff and other minor youth members. Despite this, Defendants intentionally turned a blind eye and continued to allow Perpetrator Goodrich to remain in a position of power and authority within the Church, failing to take any action to prevent further abuse. Defendants did not discipline, denounce, or discharge Perpetrator Goodrich; instead, by failing to act, Defendants accepted and ratified his conduct, thereby enabling Perpetrator Goodrich to continue his sexual abuse of Plaintiff.

83.    At all times, Defendants, were employees, administrators, leaders, and/or agents who were acting within the course and scope of their employment or agency with The Church of Jesus Christ of Latter-day Saints when they ratified Perpetrator Goodrich's criminal conduct and adopted it as if it were their own conduct.

84. As a direct and proximate result of Defendants conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

85. In committing the acts described herein, the conduct of the Defendants', their agents and employees, and DOES 1-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, the Church, the Temple Corporation and the Victorville California Stake.

## FOURTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff Against All Defendants and DOES 1-100)

86. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

87. Acting with knowledge of their superior positions and special relationships with Plaintiff John RA Doe and realizing Plaintiff's heightened susceptibility to emotional distress due to his young age, inexperience, and vulnerability, Defendants embarked on a course of grooming, coercion, and intimidation so that Perpetrator Goodrich could ultimately force Plaintiff to engage in unlawful sexual acts. At all relevant times, Perpetrator Goodrich held an authoritative and influential position within the Church that required him to interact with youth members. Using this position of trust, Perpetrator Goodrich isolated Plaintiff during Church activities, lured him into private areas of the meetinghouse, vehicles, and other locations, and engaged in unlawful sexual contact with him.

88. Perpetrator Goodrich's misconduct was extreme and outrageous, exceeding all bounds tolerated in a civilized community. He sexually abused Plaintiff when Plaintiff was a minor,

causing severe and lasting emotional and psychological injuries, including PTSD, anxiety, depression, nightmares, dissociation, and long-term difficulties with trust and intimacy. Goodrich also exploited his position of authority to create circumstances in which Plaintiff, as a young child, felt unable to disclose the abuse, fearing retaliation, further harm, and loss of safety within his Church community.

89.     Perpetrator Goodrich's acts were intentional, willful, abusive, oppressive, and malicious, and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and severe emotional distress, or with reckless disregard for the high probability that such extreme distress would result.

90.     Defendants, by and through their agents and employees, ratified Goodrich's sexual abuse of Plaintiff because they had prior knowledge, or in the exercise of reasonable care should have had knowledge, of Perpetrator Goodrich's inappropriate sexual conduct with minors. Despite this knowledge, Defendants failed to take reasonable steps to protect Plaintiff and continued to allow Goodrich to serve in positions granting him unsupervised access to youth members, thereby enabling the abuse.

91.     As a direct and proximate result of the actions and misconduct of Defendants, and their agents and employees, including but not limited to allowing Perpetrator Goodrich continued access to Plaintiff and failing to protect him from foreseeable harm, Plaintiff has suffered and will continue to suffer severe emotional distress, psychological trauma, loss of enjoyment of life, and other damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

### FIFTH CAUSE OF ACTION

### NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE

### (Plaintiff Against All Defendants and DOES 1-100)

92.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

93.     Defendants, including their bishops, clergy, counselors, employees, agents, and DOES 1–100, owed a duty to exercise reasonable care in investigating, hiring, training, supervising,

and retaining individuals who would work with minors in the Church community. This duty included protecting minors, including Plaintiff, from foreseeable harm by unfit or dangerous individuals under their authority.

94.    During the time Plaintiff was sexually abused by Perpetrator Goodrich, Defendants knew, or in the exercise of reasonable care should have known, of complaints, reports, or warnings of Goodrich's misconduct. Despite this, Defendants failed to adequately investigate or take appropriate disciplinary or protective action.

95.    Instead, Defendants failed to protect Plaintiff and allowed Goodrich to remain in a position of authority within the Church community. During the period of abuse, Defendants disregarded Plaintiff's safety and well-being. Plaintiff's ongoing participation in Church activities, coupled with Goodrich's repeated unsupervised access to him, should have alerted Defendants to the clear danger Plaintiff faced. Defendants' refusal to intervene or provide any protection reflected a complete disregard for their duty to safeguard Plaintiff.

96.    On information and belief, Defendants knew or in the exercise of reasonable case should have known that Perpetrator Goodrich had engaged in repeated misconduct involving both minor male and female members of the Church community prior to and during the period of abuse, making the harm to Plaintiff not only foreseeable but preventable.

97.    Defendants breached their duty to properly investigate, hire, train, and supervise Goodrich in connection with his role in Church activities.

98.    Had Defendants properly investigated, supervised, trained, and monitored Goodrich's conduct, they would have discovered his unfitness to be given access to and authority over minors. Instead, their inaction allowed him to continue, unhindered, in his predatory conduct toward underage members of the Church community, including Plaintiff.

99.    Defendants negligently hired, supervised, retained, and monitored Perpetrator Goodrich, and failed to ensure the safety of Plaintiff, a minor entrusted to their custody, care, and control.

100.    Defendants also negligently failed to implement or enforce adequate procedures and

policies designed to prevent, detect, or deter the sexual abuse of minors by Church officers, employees, clergy, volunteers, and other agents, including Goodrich.

101.    Had Defendants fulfilled their duties to reasonably monitor, supervise, and investigate their clergy, leaders, and agents, including Goodrich, Plaintiff would not have been subjected to the sexual abuse and related harm described herein.

102.    As a direct and proximate result of Defendants' negligence, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical and psychological care and treatment, and past and future loss of earnings and earning capacity, in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court

## SIXTH CAUSE OF ACTION
### NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE
### (Plaintiff Against All Defendants and DOES 1-100)

103.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

104.    Defendants, their clergy, employees, agents, volunteers, and DOES 1–100, owed a duty to exercise reasonable care in warning, training, and educating minors in their custody, including Plaintiff, about known and reasonably knowable dangers of sexual abuse, and to train and educate clergy, faculty, and staff about sexual harassment policies, appropriate boundaries, and methods to prevent, detect, and report sexual misconduct.

105.    Defendants breached their duty by, among other things: (a) failing to provide Plaintiff and other minors with information and education about how to identify, avoid, and report inappropriate sexual conduct by clergy, staff, or volunteers, including Perpetrator Goodrich; and (b) failing to train clergy, faculty, and staff, including Goodrich, regarding Defendants' sexual harassment policies, appropriate boundaries, and their obligations to protect minors.

106.    As a direct and proximate result of these failures, and as a substantial factor in

causing Plaintiff's harm, Plaintiff was groomed, manipulated, and ultimately sexually abused by Perpetrator Goodrich.

107.     Had Defendants fulfilled their duties to warn, train, and educate, Plaintiff would not have been subjected to the sexual abuse and related injuries described herein.

108.     As a direct and proximate result of Defendants' negligent conduct, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical and psychological care and treatment, and past and future loss of earnings and earning capacity, in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

## SEVENTH CAUSE OF ACTION
### BREACH OF MANDATORY DUTY:
### FAILURE TO REPORT SUSPECTED CHILD ABUSE
### (Plaintiff Against All Defendants and DOES 1-100)

109.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

110.     Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

111.     Defendants, acting through their employees, knew or in the exercise of reasonable care should have known that Perpetrator Goodrich was engaged in sexual misconduct with minors, yet failed to report the suspected abuse to the authorities.

112.     Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

23

113.    Defendants' failure to comply with their mandatory reporting duties allowed Perpetrator Goodrich to remain in a position of authority and to continue sexually abusing Plaintiff, causing preventable and compounding harm.

114.    As a direct and proximate result of Defendants' violation of their statutory duty, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical and psychological care and treatment, and past and future loss of earnings and earning capacity, in an amount to be proven at trial but exceeding the jurisdictional minimum of this Court.

## EIGHTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff Against All Defendants and DOES 1-100)

115.    Plaintiff incorporates by reference each and every prior paragraph of this Complaint as though set forth in full in this cause of action.

116.    Defendants owed Plaintiff a duty of care to protect him, as a minor in their Church community, from known and knowable sexual predators.

117.    Defendants unreasonably endangered Plaintiff's physical safety and emotional well-being by placing him in direct and repeated contact with Perpetrator Goodrich, an individual Defendants knew or in the exercise of reasonable care should have known, posed a danger to minor congregants.

118.    As a result, Perpetrator Goodrich was granted unfettered and unsupervised access to Plaintiff, during which he repeatedly sexually abused Plaintiff, a minor.

119.    Defendants knew, or in the exercise of reasonable care should have known, that exposing Plaintiff to a sexual predator under their authority would cause him to suffer severe emotional distress, in addition to the trauma of the abuse itself.

120.    As a direct and proximate result of Defendants' negligence, and as a substantial factor in causing Plaintiff's harm, Plaintiff suffered and continues to suffer physical pain, severe

emotional distress, psychological harm, and other injuries for which he is entitled to monetary damages and other relief according to proof at trial.

121.    Defendants' conduct was despicable and carried out with malice and oppression, because they knowingly harbored and empowered a sexual predator and placed him in direct contact with minor congregants, including Plaintiff, in conscious disregard of the safety and rights of those children.

122.    As a result of this wanton, willful, malicious, and oppressive conduct, Plaintiff is entitled to an award of punitive damages pursuant to Civil Code § 3294.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff JOHN RA DOE prays for judgment against Defendants THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, VICTORVILLE CALIFORNIA STAKE OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, and DOES 1 through 100, and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damages according to proof;
2. For an award of punitive and exemplary damages against Defendants, its agents and or employees, including Does 1 through 100;
3. Attorney's fees;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

1

2      Dated: October 17, 2025                    **ABIR COHEN TREYZON SALO, LLP**

3

4                                                 By: *Pinar Kermani*

5                                                 Boris Treyzon, Esq.
                                                  Derek Braslow, Esq. (Pro Hac Vice
6                                                 Forthcoming)
                                                  Michael Zuzo, Esq.
7                                                 Pinar Kermani, Esq.
                                                  Attorneys for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL